J-S13030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PHILLIP G. MOELLER, JR. | : | |
| | : | |
| Appellant | : | No. 1303 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 8, 2020
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001646-2015

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED: JULY 27, 2022**

Appellant, Phillip G. Moeller, Jr., appeals *nunc pro tunc* from the judgment of sentence entered in the Schuylkill County Court of Common Pleas, following his jury trial conviction for one count of involuntary manslaughter.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. On October 8, 2013, Appellant babysat his girlfriend's four-year-old grandson ("Victim"). (*See* N.T. Trial, 7/23/20, at 91). That evening, Appellant called his girlfriend and told her that Victim "fell, had an accident," and Victim was "in the hospital." (*Id.* at 97). At first, Appellant told his girlfriend that Victim

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2504(a).

fell after "jumping on the bed." (*Id.* at 100). Later, Appellant changed his story and claimed that Victim was injured while "they were roughhousing and [Appellant] was holding [Victim] up in the air and dropping him on the bed." (*Id.* at 101). Appellant indicated that Victim hit his head on the "corner of the footboard pole there on the bed." (*Id.* at 102). Days later, Victim died as a result of his injuries.

On September 10, 2015, the Commonwealth filed a criminal information charging Appellant with involuntary manslaughter. Appellant proceeded to his first jury trial, which ended in a mistrial on June 6, 2017. Following a second trial, a jury found Appellant guilty of involuntary manslaughter on July 24, 2020.[2] On September 8, 2020, the court imposed an aggravated-range sentence of two (2) to five (5) years' imprisonment.

On October 5, 2020, Appellant filed an untimely post-sentence motion. In it, Appellant claimed that he was unable to timely file a post-sentence motion due to delays arising from the COVID-19 pandemic. Appellant asked the court to grant *nunc pro tunc* relief and consider the motion as properly filed, and he requested the imposition of a lesser sentence. On November 10, 2020, the court granted *nunc pro tunc* relief, accepted the motion as properly

---

[2] At trial, the Commonwealth presented testimony from Doctor Paul Bellino, M.D., who testified as an expert in "pediatrics and child abuse." (N.T. Trial at 162). Significantly, Dr. Bellino opined that Victim's injuries were inconsistent with a single fall. (*See id.* at 192). Rather, Dr. Bellino's "medical impression [was] that this child has been physically abused." (*Id.* at 193).

filed, and scheduled a hearing on Appellant's sentencing claim. Following a hearing, the court declined to reduce Appellant's sentence.

On April 23, 2021, Appellant filed a counseled petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, alleging that prior counsel was ineffective in conjunction with the preservation of post-sentence and direct appeal rights. The court granted PCRA relief on August 24, 2021. Specifically, the court reinstated Appellant's right to file another post-sentence motion *nunc pro tunc*. Appellant timely filed a post-sentence motion *nunc pro tunc* on August 27, 2021. Appellant argued that the court imposed an aggravated-range sentence "based upon testimony that other bruises found on the victim 'could have' been caused by abuse." (Post-Sentence Motion *Nunc Pro Tunc*, filed 8/27/21, at ¶4). Appellant insisted that no other facts supported such a harsh sentence, and he requested that the court modify his sentence to fall within the standard range. The court denied relief on October 6, 2021.

Appellant timely filed a notice of appeal *nunc pro tunc* on October 8, 2021. On October 12, 2021, the court ordered that Appellant file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on October 26, 2021.

Appellant now raises one issue on appeal:

> Whether the [trial] court abused its discretion by imposing
> a sentence that was unduly harsh?

(Appellant's Brief at 6).

Appellant argues that the court relied on impermissible factors when imposing an aggravated range sentence. Specifically, Appellant contends that the court based the sentence on "speculative" testimony that Appellant intentionally committed acts of child abuse. Appellant maintains the Commonwealth did not put the question of Appellant's intention before the jury. Further, Appellant emphasizes that some trial testimony supported his claim that Victim's bruising resulted from roughhousing and medical treatment rather than child abuse. Appellant insists the court improperly relied on the speculative testimony to justify the imposition of an aggravated range sentence. Appellant concludes that this Court must vacate the sentence and remand for re-sentencing. As presented, Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Shugars*, 895 A.2d 1270 (Pa.Super. 2006) (stating claim that sentence was excessive based on impermissible factors constitutes challenge to discretionary aspects of sentencing).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify

sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Phillips, supra* at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

- 5 -

process." ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*) (quoting ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011)). A substantial question is raised when an appellant alleges that his sentence is excessive because of the trial court's reliance on impermissible factors. ***See Commonwealth v. Allen***, 24 A.3d 1058, 1064-65 (Pa.Super. 2011).

Instantly, Appellant timely filed his notice of appeal *nunc pro tunc*, and he preserved his issue by including it in his post-sentence motion *nunc pro tunc*. Although Appellant's brief does not include a Rule 2119(f) statement, the Commonwealth has not objected to this deficiency. Likewise, this deficiency does not hamper our ability to resolve Appellant's claim. ***See Shugars, supra*** at 1274 (stating that Superior Court may review claims that fail to comply with Rule 2119(f) if Commonwealth does not object and absence of Rule 2119(f) statement does not significantly hamper ability to review appellant's argument). Further, Appellant's claim raises a substantial question as to the appropriateness of the sentence imposed. ***See Allen, supra***. Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment

exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* When considering the propriety of imposing an aggravated range sentence, this Court has previously said:

> [T]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a normal for comparison, *i.e.,* the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases….
>
> The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.
>
> An aggravated range sentence … will thus be justified to the

extent that the individual circumstances of [an appellant's] case are atypical of the crime for which [he] was convicted, such that a more severe punishment is appropriate.

*Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa.Super. 2006) (internal citation omitted).

Instantly, the sentencing court provided an on-the-record statement of reasons to support the sentence imposed. Initially, the court acknowledged that Appellant had no prior record and appeared to be a responsible person. (N.T. Sentencing, 9/8/20, at 8). Nevertheless, the court emphasized that Victim's injuries were inconsistent with Appellant's explanation, and not the type "which would have occurred if a kid was thrown up in the air and came down on a bedpost." (*Id.*) Our review of the record confirms this assertion. Specifically, Dr. Bellino testified that "the injury to [Victim's] brain caused swelling which ultimately compromised the circulation of blood to his brain as well as the function of his brain." (N.T. Trial at 168). Dr. Bellino also observed that Victim had suffered hemorrhages in both eyes, an "air leak" in his chest, and physical trauma to his upper arms, chest, and abdomen. (*Id.* at 190-91). Moreover, regarding Appellant's explanation for the injuries, Dr. Bellino testified there was "nothing there to suggest that there's been any significant trauma to the back of the head." (*Id.* at 173).

Dr. Bellino noted that the location of Victim's bruises indicated that Victim was abused:

> Well, I believe there's medical evidence on [Victim's] examination that he has had multiple points of impact over

his face, sides of both of his head, [and] his shoulders that are caused by trauma. The story that is offered is that he hasn't engaged in any physical behavior that could have produced those kinds of traumatic injuries.

I would not expect to see the amount of bruising that he has from just the child exploring his environment. This coupled with the severe brain injury that he has including the bleeding within his head as well as the injury to the actual brain tissue itself with the lack of any other history is what we see in cases of child physical abuse. So it would be my medical impression that this child has been physically abused.

(*Id.* at 192-93). Thus, contrary to Appellant's assertions, the court did not base the sentence upon mere speculation. Rather, the court drew its conclusions from the ample testimony of the Commonwealth's expert.

Here, the court properly considered the particular circumstances of the case and Appellant's individual character. ***See Griffin, supra***. Based upon the foregoing, the court found that Appellant's conduct warranted an aggravated sentence where evidence of child abuse distinguished this case from a typical involuntary manslaughter case. ***See Fullin, supra***. Under these circumstances, we see no abuse of discretion. ***See McNabb, supra***. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/27/2022